NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 240486-U

NO. 4-24-0486

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
February 19, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Peoria County |
| JEREMIAH HILLSMAN, | ) | No. 17CF216 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Katherine S. Gorman, |
| | ) | Judge Presiding. |

JUSTICE KNECHT delivered the judgment of the court.
Presiding Justice Harris and Justice Vancil concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The trial court did not err in summarily dismissing defendant's postconviction petition, and defendant's new claim of ineffective assistance of counsel on appeal is forfeited.

¶ 2   Defendant, Jeremiah Hillsman, timely appeals the summary dismissal of his *pro se* petition filed pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2022)), wherein he argued the trial court erred when it barred trial counsel from questioning D.R., a key witness, about her mental health. On appeal, defendant asks us to (1) reframe his claim as one challenging trial counsel's effectiveness and, in doing so, (2) hold the summary dismissal of his petition was improper, as he stated the gist of a constitutional claim. We affirm.

¶ 3                              I. BACKGROUND

¶ 4   On direct appeal, the appellate court set forth all the relevant facts in this case.

*People v. Hillsman*, 2023 IL App (3d) 180232-U. Accordingly, we recite only those facts relevant to this appeal.

¶ 5        In March 2017, defendant was charged with the aggravated battery (720 ILCS 5/12-3.05(b)(1) (West 2016)) of C.R., D.R.'s 15-month-old child. Before his jury trial began, the State filed a motion *in limine*, seeking to bar defendant from presenting evidence of D.R.'s mental health.

¶ 6        In the motion, the State asserted defendant and D.R. told the police D.R. was diagnosed with bipolar disorder, anxiety, and depression. The State claimed defendant told the police D.R. was also diagnosed with borderline personality disorder. D.R. would testify, although she had tendencies toward a borderline personality disorder, a diagnosis for it was "ruled out." The State contended D.R. informed the police she had been "somewhat compliant with her mental health medications prior to this incident." The State argued defendant, as the person who would seek to raise D.R.'s mental health to attack her credibility, memory, and perception, bore the burden of establishing how D.R.'s mental health was relevant.

¶ 7        At the hearing on the State's motion *in limine*, defense counsel urged the trial court to postpone ruling on the motion until the trial, when D.R. testified. Although defense counsel recognized a hearing on a motion *in limine* may be had at any time, he claimed "the best time to make a decision regarding a motion *in limine*, when it relates to likely testimony or areas of testimony, [is] in the context of the trial." The court declined to postpone the hearing. Over defense counsel's objection, the parties proceeded with a hearing on the merits of the motion.

¶ 8        The State argued allowing defense counsel to question D.R. about her mental health would be highly prejudicial, as the conclusion to draw is D.R. is " 'crazy,' " and, thus, " 'you can't believe her' " or " 'she's the one that must have done something wrong, not

[defendant].' " Defense counsel assured the trial court he would not make either of these arguments at trial. The court then asked defense counsel how D.R.'s mental health would affect her perception and memory. Although counsel advised the court it was going to vigorously cross-examine D.R., he could not say how, if at all, her mental health would impact her credibility. The court granted the State's motion *in limine*, finding defense counsel failed to meet his burden of establishing the relevancy of D.R.'s mental health. The court noted it would revisit the issue if it was brought up at trial.

¶ 9    Evidence presented at trial revealed defendant and D.R. were friends. On the evening of November 17, 2016, D.R. took C.R. to defendant's apartment, where the three of them spent the night alone together. C.R. was generally healthy and unharmed when they arrived. After arriving, defendant was alone with C.R. for 20 minutes. During this time, D.R., who was in another room, heard C.R. crying loudly and choking. She also heard a few slapping noises, which prompted her to check on C.R. She noticed C.R. had blood on his face, which defendant claimed came from a scab on C.R.'s nose. The next morning, C.R. was acting strangely, so D.R. took him to the emergency room. A physician concluded C.R. was battered. Neither evidence of nor questions about D.R.'s mental health were presented at the trial. The jury found defendant guilty of aggravated battery.

¶ 10    Throughout the proceedings, defendant, who was represented by counsel, filed many *pro se* motions. He (1) moved for access to D.R.'s medical records, (2) sought reconsideration of the trial court's order granting the State's motion *in limine*, (3) argued the State committed prosecutorial misconduct when it barred him from presenting evidence of D.R.'s mental health, and (4) claimed defense counsel provided "ineffective assistance *** by failing to challenge the [State's] witness['s] credibility by the avoidance of requesting the [State]

to turn over all of their evidence wherein their witness[']s criminal, medical records would've been presented." Defense counsel did not adopt any of defendant's motions, and the court never ruled on them.

¶ 11 Defendant was sentenced to 24 years' imprisonment. Defendant appealed, arguing (1) he was denied a fair trial when the State was allowed to admit overly prejudicial evidence and (2) his trial counsel was ineffective for failing to object to the admission of this evidence and preserve the error for appeal. The Appellate Court, Third District, affirmed. See *Hillsman*, 2023 IL App (3d) 180232-U, ¶ 2.

¶ 12 In December 2023, defendant filed a *pro se* petition for postconviction relief, arguing, as relevant here, the trial court erred when, in granting the State's motion *in limine*, it barred him from questioning D.R. about her mental health. Defendant alleged:

"The court limited the *** cross examination of a key witness. The witness has a history of mental illness[. T]he State filed a motion to stricken [D.R.'s] mental health records. These could have been brought before the court to show that her recollection was false. That being brought before the court relates to perception and the ability to relate what was perceived, and it is relative to credibility and it is a permissable [*sic*] area for impeachment. [Citation.] Defense counsel repeatedly explained the court doesn't know and admits they have no idea whether he's going to use the records. [Citation.] The mental health of a witness relates to perception and the ability to relate to what was perceived, and it is relevant to creditbility [*sic*]. Counsel has the right to cross examine eyewitness and any witness that's hostile to counsel on bias, interest, or ability to see, to hear, on ability to speak, on ability to remember, on intoxication, on medication. The

- 4 -

reason is those are all relevant. Those are things a jury needs to know. Counsel told the court on record if the hearing of such a motion is deferred, to that time, it would seem that there's much less potential for error or for limiting a defendant's case. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the U.S. nor shall any state deprive any person of life, liberty, or property without due process of law[.] [Citation.] Nor deny to any person within is [*sic*] jurisdiction the equal protection of the laws. Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech."

The petition contained no reference to appellate counsel's performance. Additionally, defendant neither attached to his petition documents supporting his claim nor explained why such documents were not attached.

¶ 13         The trial court summarily dismissed the petition as frivolous and patently without merit.

¶ 14         This appeal followed.

¶ 15                                II. ANALYSIS

¶ 16         At issue on appeal is whether the summary dismissal of defendant's *pro se* postconviction petition was proper. The Act "provides a remedy to defendants who have suffered substantial violations of their constitutional rights." *People v. Youngblood*, 389 Ill. App. 3d 209, 213 (2009). "[T]here are three stages to proceedings under the Act." *Id.* This appeal concerns the dismissal of a postconviction petition at the first stage.

¶ 17         "At the first stage, the trial court independently reviews the petition within 90 days of its filing and determines whether the petition is frivolous or patently without merit." *Id.*

"A petition is considered frivolous or patently without merit when the allegations in the petition fail to present the gist of a constitutional claim." *Id.* at 214. "The gist standard is a low threshold." (Internal quotation marks omitted.) *Id.* "Although a 'gist' is something more than a bare allegation of a deprivation of a constitutional right [citation], it is something less than a completely pleaded or fully stated claim." *Id.* "Thus, to set forth the gist of a constitutional claim, the petition need present only a limited amount of detail and need not set forth the claim in its entirety." *Id.* In assessing whether a petition sets forth the gist of a claim, any constitutional issue not raised in the summarily dismissed *pro se* postconviction petition is forfeited and cannot be raised for the first time on appeal. *People v. Pendleton*, 223 Ill. 2d 458, 475 (2006); see 725 ILCS 5/122-3 (West 2022) ("Any claim of substantial denial of constitutional rights not raised in the original or an amended petition is [forfeited]."). We review *de novo* the summary dismissal of a petition. *Youngblood*, 389 Ill. App. 3d at 214. In doing so, "we may affirm the trial court's decision on any valid basis that appears in the record." *Id.* at 213.

¶ 18    Defendant argues the summary dismissal of his petition was improper because he set forth the gist of a constitutional claim. In his petition, defendant claimed the trial court should not have barred him from questioning D.R. about her mental health. On appeal, defendant argues he was denied the right to the effective assistance of trial counsel. Defendant contends, if we reframe his claim of trial court error to one alleging ineffective assistance of trial counsel, "counsel arguably provided ineffective assistance by failing to argue the relevance of [D.R.'s] mental health diagnoses to her credibility." Defendant argues reframing his issue this way is proper because review of petitions dismissed at the first stage are subject to a " 'lenient eye,' " and "the improper framing of the issue is not fatal to his petition advancing to the second stage where the issue is solely based on a legal distinction rather than a factual error." In response, the

State argues the claim is forfeited. We agree with the State.

¶ 19    Instructive on this point is *People v. Cole*, 2012 IL App (1st) 102499. There, the defendant filed a *pro se* postconviction petition, arguing "the trial court violated Illinois Supreme Court Rule 431(b) (eff. May 1, 2007) by failing to 'properly question the venire' regarding the principles underlying the trial of the defendant." *Id.* ¶ 4. Nowhere in his petition did the defendant challenge appellate counsel's performance on direct appeal. *Id.* The trial court summarily dismissed the petition, finding the defendant's claim was forfeited because it could have been raised on direct appeal. *Id.* ¶ 5.

¶ 20    On appeal, the defendant claimed for the first time appellate counsel was ineffective for failing to raise the Rule 431(b) issue on direct appeal. *Id.* ¶ 9. The State argued the defendant was precluded from raising any issue concerning appellate counsel's effectiveness because he did not raise it in his petition. *Id.* ¶ 10. In response, the defendant asserted, under a "liberal construction of his petition," he raised an " 'implicit claim' of ineffective assistance of appellate counsel." *Id.* ¶ 11.

¶ 21    The appellate court rejected the defendant's argument, determining " 'implicit' " claims of ineffective assistance of appellate counsel do not "fall within the 'liberal construction' mandate for review of *pro se* postconviction petitions." *Id.* ¶ 14. The court noted, "[C]laims not raised in the defendant's postconviction petition may not be raised for the first time on appeal from the [trial] court's dismissal of that petition." *Id.* ¶ 13 (citing *People v. Jones*, 213 Ill. 2d 498, 504 (2004)). The court then found the defendant's claim of appellate counsel's ineffectiveness could not be "inferred," as inferring claims would be (1) exercising supervisory authority appellate courts lack and (2) disregarding our supreme court's mandate that appellate courts must follow " 'the strictures of the Act' ", including the provision of the Act stating that

claims not raised in the petition are forfeited. *Id.* ¶¶ 13-15 (quoting *Jones*, 213 Ill. 2d at 504); see 725 ILCS 5/122-3 (West 2022).

¶ 22 Here, we similarly cannot reframe defendant's claim of trial court error as one concerning trial counsel's ineffectiveness. As in *Cole*, allowing defendant to reframe his issue now as one concerning trial counsel's ineffectiveness would not only violate our supreme court's order to follow the parameters of the Act, but it would force us to exercise supervisory authority over defendant's appeal and address an issue never presented to the trial court, which, as a court of appeal, we cannot do.

¶ 23 Citing *People v. Hodges*, 234 Ill. 2d 1 (2009), defendant argues we must allow him to reframe his trial court error claim as one concerning trial counsel's ineffectiveness. We disagree. At issue in *Hodges* was whether the defendant's *pro se* postconviction petition, wherein he alleged trial counsel was ineffective for failing to investigate and produce three witnesses to support a self-defense claim, presented the gist of a claim, raised for the first time on appeal, that trial counsel was also ineffective for failing to use the same witnesses to support his second degree murder theory, *i.e.*, an unreasonable belief that the use of deadly force was necessary. *Id.* at 21. Our supreme court determined the defendant's petition presented the gist of a claim trial counsel was ineffective for failing to present evidence to support second degree murder, *i.e.*, imperfect self-defense. *Id.* In doing so, the court noted, "[T]he issue of whether [the] defendant's *pro se* petition, which focused on self-defense, could be said to have included allegations regarding 'unreasonable belief' second degree murder—*i.e.*, imperfect self-defense—is at minimum the type of 'borderline' question which, under a liberal construction, should be answered in [the] defendant's favor." *Id.*

¶ 24 Here, unlike in *Hodges*, defendant did not raise an issue in his *pro se*

postconviction petition that is closely aligned with the issue he raises on appeal. In *Hodges*, the issues were factually the same. The only difference between the issues was whether the facts alleged to support an argument trial counsel was ineffective for failing to present evidence to support the self-defense claim (the defendant was justified in using deadly force) could also support an argument trial counsel was ineffective for failing to present evidence to support the defendant's imperfect self-defense claim (the defendant unreasonably believed he was justified in using deadly force). *Id.* Here, the issue defendant raised in his *pro se* petition was whether the trial court erred in barring him from questioning D.R. about her mental health. On appeal, defendant argues "[trial] counsel arguably provided ineffective assistance by failing to argue the relevance of [D.R.'s] mental health diagnoses to her credibility." These two issues, unlike those in *Hodges*, are completely different. Not only does the issue defendant raises in his petition differ from the one he raises on appeal in terms of who acted improperly (the trial court or trial counsel), but resolving the issue raised in the petition versus that raised on appeal concerns different facts (why the trial court ruled the way it did, as opposed to what trial counsel should have done) and different constitutional violations (a confrontation clause violation versus denial of the right to counsel).

¶ 25    Because defendant did not raise a claim of ineffective assistance of trial counsel as to the motion *in limine* and this court will not reframe defendant's petition to include such a claim, defendant's claim on appeal is forfeited. See *Pendleton*, 223 Ill. 2d at 475; 725 ILCS 5/122-3 (West 2022) ("Any claim of substantial denial of constitutional rights not raised in the original or an amended petition is [forfeited]."). Moreover, because we will not reframe defendant's postconviction petition to include a claim of ineffective assistance, we look at the petition only as filed to determine whether the trial court erred in summarily dismissing it. We

- 9 -

conclude the court properly dismissed defendant's postconviction petition.

¶ 26        First, defendant's claim the trial court erred in granting the motion *in limine* was forfeited because he failed to raise the claim on direct appeal. Proceedings under the Act are collateral in nature, not an appeal from the defendant's conviction or sentence. *People v. English*, 2013 IL 112890, ¶ 21. Thus, issues adjudicated on direct appeal or a previous collateral proceeding are barred by *res judicata*, and issues that could have been raised, but were not, are forfeited. *People v. Tate*, 2012 IL 112214, ¶ 8. Here, defendant did not raise any issue related to the motion *in limine* on direct appeal. Moreover, as the State points out, defendant never argued appellate counsel was ineffective on direct appeal for failing to raise trial court error as to the motion *in limine* (nor, for that matter, trial counsel's ineffectiveness as to the motion *in limine*). Because defendant did not raise on direct appeal any claim related to the motion *in limine* and does not argue appellate counsel was ineffective for failing to do so, the trial court did not err in summarily dismissing his postconviction petition.

¶ 27        Second, defendant failed to attach to his petition evidence to support his claims or explain why such documents were not attached. See 725 ILCS 5-122-2 (West 2022) ("The petition shall have attached thereto affidavits, records, or other evidence supporting its allegations or shall state why the same are not attached."). This alone is fatal and warrants affirming the trial court's summary dismissal of defendant's postconviction petition. See *People v. Collins*, 202 Ill. 2d 59, 66 (2002) ("[T]he failure to either attach the necessary 'affidavits, records, or other evidence' or explain their absence is 'fatal' to a post-conviction petition [citation] and by itself justifies the petition's summary dismissal.").

¶ 28        Quoting *People v. Roman*, 2022 IL App (1st) 201173, ¶ 23, defendant argues the lack of documentation or explanation for its absence is not fatal because it "can be excused at the

first stage [of postconviction proceedings] 'where the record corroborates the petition's factual claims.' " *Roman* is not persuasive here.

¶ 29    In *Roman*, the defendant was convicted of first degree murder and sentenced to 32 years' imprisonment. *Id.* ¶ 11. He appealed, his conviction was reversed, and the case was remanded for a retrial. *Id.* ¶ 12. On remand, the defendant entered a negotiated guilty plea. *Id.* ¶ 13. Before accepting the plea, the trial court admonished the defendant he was subject to a sentence between 20 and 60 years. *Id.* In actuality, because nothing in the record revealed the defendant had committed any wrongdoing before retrial that would warrant a harsher sentence, he faced a prison sentence between 20 and 32 years. See *id.* ¶ 26; 730 ILCS 5/5-5-4(a) (West 2020) ("Where a conviction or sentence has been set aside on direct review or on collateral attack, the [trial] court shall not impose a new sentence for the same offense *** which is more severe than the prior sentence *** unless the more severe sentence is based upon conduct on the part of the defendant occurring after the original sentencing."). The court accepted the defendant's guilty plea and imposed the agreed upon sentence of 24 years. *Roman*, 2022 IL App (1st) 201173, ¶ 13. Thereafter, the defendant filed a *pro se* postconviction petition, arguing his counsel on remand was ineffective because he misadvised the defendant about the potential sentencing range he faced on retrial. *Id.* ¶ 14. Attached to the petition were sections of the trial transcripts, including a portion of the plea hearing. *Id.* The court summarily dismissed the petition, and the defendant appealed. *Id.*

¶ 30    On appeal, the State claimed the defendant's petition was insufficient because it lacked evidentiary support. *Id.* ¶ 16. The appellate court disagreed, noting, "[The defendant] attached excerpts from the record that included a section of the plea hearing transcript where the trial court also admonished him that he faced up to 60 years if found guilty after a retrial." *Id.*

- 11 -

¶¶ 16, 24. The court observed this evidence "corroborate[d] his claims enough to pass the low bar of first-stage review." *Id.* ¶ 24. Specifically, the court observed, "[I]t [was] highly unlikely counsel would have stayed silent if he had recently given [the defendant] correct information about his resentencing risk." *Id.*

¶ 31        Here, defendant attached nothing to his petition, and nothing in the record corroborates defendant's claim D.R.'s mental health affected her ability to testify truthfully about what she heard and saw the night C.R. was battered. The only fact the record shows is D.R. had a history of mental health issues.

¶ 32        Defendant points to the State's motion *in limine* and his pretrial *pro se* motions as support for his claim. Although these documents suggest D.R. had mental health issues, nothing indicates how her mental health impacted her ability to perceive what transpired the night C.R. was injured, recall what transpired, or testify truthfully about what happened, and the record reveals D.R. was taking medication for her mental issues. Thus, to the extent D.R.'s mental health could have affected her credibility, the fact she was taking her medication certainly lessened, if not alleviated, any such problems.

¶ 33        Citing pages of the appendix to his brief, defendant also claims "[D.R.] informed multiple people that she had borderline personality disorder and had been hospitalized for psychiatric reasons." We cannot consider these items because they were not attached to defendant's petition. See *People v. Anderson*, 375 Ill. App. 3d 121, 139 (2007) (the appellate court refused to consider a "report for the first time on appeal without it first being attached to [the] defendant's postconviction petition for initial scrutiny and evaluation at the trial court level").

¶ 34        In sum, we conclude the trial court's summary dismissal of defendant's

postconviction petition was proper where defendant's postconviction claim was forfeited and defendant did not attach to his petition evidence supporting his claim or explain why such documentation was not attached. See *Youngblood*, 389 Ill. App. 3d at 213 ("[W]e may affirm the trial court's decision on any valid basis that appears in the record.").

¶ 35                                      III. CONCLUSION

¶ 36          For the reasons stated, we affirm the trial court's judgment.

¶ 37          Affirmed.